IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

|  |  |  |
|---|---|---|
| MICHELLE ANTOLIK, SARA BIRIS, MARLEEN DIXON, ANNE GOLKE, CAROL JONES, JENNIFER LADEHOFF, SUSAN MCCLELLAN, DARLENE OWENS, LINH PHANTAHAVONG, SUSAN ROBEOLTMAN, DENA STEINBACH, JULIE VOGELER, CONNIE WARD, TOSHA WHITSON, CHERYL WOMACK, on behalf of themselves and all others similarly situated, | * * * * * * * * * * * | 4:03-cv-90203 |
| Plaintiffs, | * * |  |
| v. | * * |  |
| SAKS INCORPORATED, d/b/a Younkers, | * * | MEMORANDUM OPINION AND ORDER |
| Defendant. | * * |  |

## I. PROCEDURAL BACKGROUND

Before the Court are the parties' cross motions for summary judgment. Defendant, Saks Incorporated ("Saks Inc."), filed its Motion for Summary Judgment (Clerk's No. 50) on June 14, 2005. Class Plaintiffs filed their Motion for Summary Judgment (Clerk's No. 63) on July 15, 2005. The Plaintiffs originally filed a petition in Iowa District Court in Polk County on March 18, 2003, for breach of contract, promissory estoppel, fraudulent misrepresentation, and a claim for violation of Iowa Code § 91A, the Iowa Wage Payment Collection Law. Defendant removed the action to federal court. In a previous order (Clerk's No. 19), this Court held that Plaintiffs' state law claims were preempted by ERISA. *See* 29 U.S.C. § 1001 et seq. Accordingly, Plaintiffs' state causes of action

were dismissed and Plaintiffs were granted fourteen days to file an amended complaint alleging causes of action under ERISA. In the Amended Complaint (Clerk's No. 20), Plaintiffs again included their claims under Iowa law and added two claims pursuant to ERISA. Reaffirming its previous order, this Court struck the four counts based upon Iowa law, as well as Plaintiffs' demand for a jury trial. Clerk's No. 24. The only two claims remaining in Plaintiffs' Complaint are the ERISA based claims – Counts V and VI. Count V is a claim to recover benefits under 29 U.S.C. § 1132(a)(1)(B). Count VI is a claim for "appropriate equitable relief" for breach of fiduciary duty pursuant to § 1132(a)(3).[1] The Class of Plaintiffs was certified on April 28, 2004 (Clerk's No. 41).[2] The parties' cross motions for summary judgment are fully submitted.

## II. FACTUAL BACKGROUND

The Class Plaintiffs are all former employees, buyer level or above, of the Younkers division of Saks Inc., and are all residents of the State of Iowa. Defendant, Saks Inc., is a company incorporated in the State of Illinois with its principal place of business in the State of Alabama. In the year 2000, Saks Inc. was comprised of a variety of retail divisions including: Saks Fifth Avenue; Proffitts; McRaes; Younkers; Parisian; Herbergers; Carson Pirie Scott; Bergners; Boston Store; and Off 5th.

---

[1] The breach of fiduciary duty claims states: "Saks' actions . . . violated its fiduciary duties to the Plaintiffs under 29 U.S.C. § 1104 and Saks is therefore liable, pursuant to 29 U.S.C. § 1109(a) and for the civil relief authorized to be imposed upon it by 29 U.S.C. § 1132." Am. Compl. at 13.

[2] The Class is defined as: "all salaried employees in the Younkers division of Saks, Inc., in Des Moines, Iowa, who received the October 27, 2000 letter and to the extent different, those to whom Saks Inc. communicated the existence of the 2000 Change of Control Severance Plan for which the consolidation of the Younkers division headquarters into Saks' Carson Pirie Scott division on or about January 30, 2003 caused the elimination of their position, a reduction in their pay, or a change in their employment location greater than 50 miles."

Each Plaintiff received a personally addressed letter dated October 27, 2000, which promised severance benefits if there was a "change of control" that caused elimination of their position, a reduction in their pay, or a change in their location greater than fifty miles. Approximately two years later, Saks Inc. effectuated an internal consolidation of the Younkers division in Des Moines, Iowa with the Carson Pirie Scott division in Milwaukee, Wisconsin. The Class Plaintiffs contend that the consolidation was a covered "change of control" under the terms of the October 27, 2000 Letter ("The Letter"), entitling them to severance payments. Saks Inc. contends that the consolidation was not a covered "change of control" relying on the "change of control" definition located in the formal ERISA plan document – 2000 Change of Control and Material Transactions Severance Plan ("Change of Control Plan").

The events leading up to the adoption of the Change of Control Plan are relevant to the cross motions for summary judgment. Prior to the adoption of the Change of Control Plan, Saks Inc. effectuated two internal consolidations of divisions – the Herbergers division headquarters into the Carson Pirie Scott division, and the McRaes home office into the Proffitts home office. Following these events, rumors began to circulate within the Younkers workforce and employees began expressing concern regarding their job security. In response to these concerns Saks Inc. adopted the Change of Control Plan effective September 13, 2000. The stated purpose of the Change of Control Plan is as follows:

> The Saks Incorporated Change of Control and Material Transaction Severance Plan (this "Plan") protects a designated group of associates against some of the financial consequences of several adverse events affecting employment so as to attract and retain the associates and motivate them to enhance the value of the underlying businesses of Saks Incorporated (the "Company") and its subsidiaries. This Plan is intended to

> qualify as an unfunded welfare plan under Section 3(1) of the Employee Retirement Income Security Act of 1974, as amended.

Def.'s App. 3. Under the formal Change of Control Plan, the term "change of control" does not include an internal consolidation of Saks Inc.'s various divisions, subsidiaries, or affiliates. The formal plan, however, including the restrictive "change of control" definition, was never distributed or provided to the Class Plaintiffs.

The only information Class Plaintiffs were given in regards to the Change of Control Plan was a letter distributed at a meeting held on October 27, 2000. Younkers employee Mark Barkley facilitated the meeting. The Letter, in its entirety reads:

SAKS INC.

> Date: October 27, 2000
>
> The Board of Directors of Saks Incorporated has adopted a change of control severance plan for certain salaried associates. We want to explain the reason for the plan and what it means to you.
>
> The Company (including the individual divisions that comprise it) is not for sale and we do not anticipate any circumstances leading to a change in control. However, some of you have suggested that we have associates who are distracted by the thought of such an event. The Board wants each key associate's full attention on achieving our plans and building a great enterprise. To support this goal and diffuse further concerns, the Board has provided a plan that functions as an associate insurance policy, protecting against an unlikely but worrisome event.
>
> For you personally, were there to be a change in control or a sale of a major business unit that caused the elimination of your position, a reduction in your pay, or a change of your location greater than 50 miles, you would be entitled to 26 weeks of salary.
>
> Building and maintaining focus and commitment is critically important to our success. We are optimistic about the balance of this year and our prospects for 2001 and beyond. Neither the Corporation nor any of its divisions are for sale nor do we expect

this to occur.  The Company's leadership and its Board of Directors are fully committed to the business and believe that we can and will achieve our plans and create substantial long term values.  Thank you for your commitment.

Sincerely,

| R. Brad Martin | Jim Coggin |
| Chairman CEO | Vice Chairman COO |
| Saks Incorporated | Saks Incorporated |

750 Lakeshore Parkway, Birmingham, AL 35211 * 205-940-4000

Def.'s App. 17- Ex. B.[3]

The Letter does not include a definition of "change of control," but the language of The Letter, in combination with the recent internal consolidations that had occurred at Saks Inc. indicates, at least arguably, that "change of control" included an internal consolidation, such as what occurred at Younkers.  The Class Plaintiffs testified at their depositions that they were happy at their job and intended to remain in their positions before they received The Letter and after they received The Letter.  They also testified that The Letter put their minds at ease and helped them focus on their job, rather than worrying about what would happen if their jobs were terminated due to another merger of divisions within Saks Inc.  Also, Class Plaintiffs testified that they either stopped looking for another job or felt it was no longer necessary to look for alternative employment upon receipt of The Letter.

Approximately two years after the Plaintiffs received The Letter, Saks Inc. announced its decision to consolidate the division headquarters of Younkers in Des Moines, Iowa into the division headquarters of Carson Pirie Scott in Milwaukee, Wisconsin.  Due to the consolidation, the Class

---

[3] Defendants refer to this letter as the "Plan Summary Letter."  Clerk's No. 9 at 3.

Plaintiffs experienced elimination of their position, a reduction in their pay, or a change of their location greater than fifty miles. Saks Inc. maintained that the Change of Control Plan was not applicable, however, Saks Inc. did offer the Plaintiffs and other employees who were adversely affected by the consolidation a separation payment and a cooperation bonus. All of the Plaintiffs accepted the separation payment and bonus.

In this Court's Order dated August 13, 2003, it was held that the Change of Control Plan was an ERISA plan. In the Order dated November 11, 2003, it was held that The Letter is not a "freestanding promise to pay benefits." Though the Court discussed in both orders the requirements for a summary plan description, neither order required a holding on whether The Letter was a summary plan description. *See* Clerk's No. 19 at 7 ("The question before the Court, however, is whether Saks established an ERISA plan with the adoption of the formal plan document. The inadequacies of the October 27 letter as a summary plan description are irrelevant to this consideration."); Clerk's No. 24 at 2 ("The Court's previous Memorandum Opinion and Order found that the change of control plan adopted by Saks was governed by ERISA and that the October 27, 2000 letter was not a summary plan description as required by ERISA."). The issue remaining before the Court, and critical to resolution of the motions for summary judgment, is whether The Letter – referred to as the Summary Plan Letter by Defendant – is a "faulty" summary plan description.

### III. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." Summary judgment "is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 209 (8th Cir. 1976) (citing *Windsor v. Bethesda Gen. Hosp.*, 523 F.2d 891, 893 n.5 (8th Cir. 1975)). Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Hunt v. Cromartie,* 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *Walsh v. United States*, 31 F.3d 696, 698 (8th Cir. 1994); *United States v. City of Columbia*, 914 F.2d 151, 153 (8th Cir. 1990). In motions for summary judgment, the court must make a distinction between the issues of law in the case and the issues of material fact.

IV.  RECOVERY UNDER 29 U.S.C. § 1132(a)(1)(B)

ERISA provides that a participant or beneficiary of an ERISA plan may bring a civil action "to recovery benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Defendant argues that Plaintiffs cannot recover under the Change of Control Plan as a matter of law because "change of control," as defined in the formal plan, does not include internal consolidations. Plaintiffs argue that The Letter constitutes a separate ERISA plan, which provides the severance benefits they have demanded.

A.  *A Freestanding ERISA Plan*

"A plan is established for ERISA purposes when a reasonable person can ascertain (1) the intended benefits, (2) the class of beneficiaries, (3) a source of funding, and (4) the procedures for receiving benefits." *Petersen v. E.F. Johnson Co.*, 366 F.3d 676, 678 (8th Cir. 2004) (citing *Bannister v. Sorenson,* 103 F.3d 632, 636 (8th Cir. 1996)).  Plaintiffs cite a Tenth Circuit case, *Deboard v. Sunshine Mining & Ref. Co,* 208 F.3d 1228 (10th Cir. 2000), in support of their argument that The Letter is a freestanding ERISA plan.  In *Deboard,* the Tenth Circuit recognized that "it is without question that an employer can have more than one employee welfare benefit plan for purposes of ERISA."  *Deboard,* 208 F.3d at 1238.  The *Deboard* court also found that the "ultimate question was whether the evidence, considered as a whole, evinced an intent on the part of the company to establish one plan or four plans."  *Id.* (citing *Chiles v. Ceridian Corp.,* 95 F.3d 1505, 1511 (10th Cir. 1996)).  In *Deboard*, the Court found that a single letter, such as the one at issue presently, can create a new ERISA plan.  In that case, however, the evidence indicated that the company intended to create a new ERISA plan.  For example, the letter at issue in *Deboard* outlined various benefits employees would receive if they opted to participate in a voluntary early retirement subsidy.  The employee welfare benefit plan previously in existence "said nothing about lifetime insurance benefits now at issue in this case."  *Id.* at 1238.  In contrast, the evidence in the present case indicates that the employer did not intend to create two separate Change of Control Plans, but that the two documents – the formal plan and The Letter – were part of the same plan.

The Plaintiffs argue that since The Letter was not distributed to all eligible employees and since the triggering events were different under the two documents (i.e., what constitutes a "change in

control"), Defendant intended to create a separate ERISA plan with The Letter. However, as discussed in this Court's previous Order (Clerk's No. 24), The Letter was issued in conjunction with the formal Change of Control plan and, in fact, is what made the Change of Control Plan a "reality." If The Letter is not a freestanding promise to pay benefits, as was held by this Court, neither is it a freestanding ERISA plan. The similarities between the formal plan and The Letter and the dates of execution make it clear that The Letter was not intended to be a separate ERISA plan. What exactly The Letter is, however, warrants further consideration. Since The Letter was the only information the Plaintiffs received, the effect of the differing terms between the formal plan document and The Letter must be explored.

B.  *Summary Plan Description*

"Adequate disclosure to employees is one of ERISA's major purposes." *Barker v. Ceridian Corp.,* 122 F.3d 628, 633 (8th Cir. 1997). The means of informing employees of an ERISA plan is through a Summary Plan Description ("SPD"). *See* 29 U.S.C. § 1022 (stating that a summary plan description must be furnished to all participants and beneficiaries). The SPD "shall be written in a manner calculated to be understood by the average plan participant" and shall include:

> the name and type of the plan;
> the name and address of the agent for service of process;
> the name and address of the plan administrator;
> the plan's eligibility requirements;
> circumstances which may result in denial of loss or benefits;
> the source of the plan's financing;
> the plan year; and
> claims procedures and remedies available for redress of denied claims.

*Palmisano v. Allina Health Sys.,* 190 F.3d 881, 888 (8th Cir. 1999) (citing 29 U.S.C. § 1022(a),

(b)).  The Code of Federal Regulations includes additional mandatory requirements.  *See* 29 C.F.R. 2520.102-2, 102-3.  The SPD "will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." *Heidgerd v. Olin Corp.*, 906 F.2d 903, 907 (2d Cir. 1990).

Whether or not the SPD meets the mandatory requirements set forth in the statute and companion federal regulations is important because it determines the effect of its contents on the terms of the formal plan.  "Where an SPD conflicts with the terms of another plan document, it has often been said that the SPD governs."  *Koons v. Aventis Pharms., Inc.*, 367 F.3d 768, 775 (8th Cir. 2004).  If an SPD does not meet the formal requirements of ERISA and its attendant regulations, it is deemed "faulty."  *Marolt v. Alliant Techsystems,* 146 F.3d 617, 621 (8th Cir. 1998).  In order to recover benefits based on the terms of a "faulty" SPD, the beneficiary "must generally show that he relied on or was prejudiced by the SPD's description of the plan's benefits."  *Dodson v. Woodmen of the World Life Ins. Soc'y*, 109 F.3d 436, 439 (8th Cir. 1997).  The Eighth Circuit, however, has also indicated that an SPD can be so "hopelessly inadequate" as to not even be deemed "faulty."  In the case of a "hopelessly inadequate" SPD, the terms of the summary have no legal effect on the terms of the formal plan.  *Palmisano,* 190 F.3d at 888.

A "hopelessly inadequate" SPD does not modify the terms of the formal plan document because "'[i]f a document is to be afforded the legal effects of an SPD, such as conferring benefits when it is at variance with the plan itself, that document should be sufficient to constitute an SPD for filing and qualification purposes.'"  *Id.* (quoting *Hicks v. Fleming Cos., Inc*., 961 F.2d 537, 542 (5th Cir. 1992)).  The decision in *Palmisano* is the only example of the Eighth Circuit holding a summary to

be "hopelessly inadequate."[4] The summary in that case was comprised of one page found in an employee benefits booklet which stated:

**EXECUTIVE BENEFITS**

**Severance**

**Amount of Benefit**. In the event of involuntary termination without cause, you will continue to receive your salary and Executive Benefits for a period of 18 months.

See the enclosed description for further details.

**Tax status**. The value of these benefits is added to your W-2 as taxable income.

*Palmisano,* 190 F.3d at 886-87. Like The Letter at issue presently, the benefits booklet was the only information provided to employees regarding severance benefits. *Id.* at 887. The Eighth Circuit in *Palmisano* listed eight mandatory contents of an SPD and found that the summary found in the employee benefits booklet was "hopelessly inadequate" because: "It contained only one piece of information required by ERISA, a mistaken description of the plans' eligibility requirements." *Id.* at 888. The *Palmisano* court also cited a Ninth Circuit case, *Pisciotta v. Teledyne Indus. Inc.*, 91 F.3d 1326 (9th Cir. 1996), as an example of a summary that was hopelessly inadequate. The summary at issue in *Pisciotta* was lacking ten of the twelve statutory elements necessary in an SPD.[5] *Pisciotta,* 91

---

[4] In *Koons*, the Eighth Circuit assumed a one-page letter was a "faulty" SPD without discussion because "neither the parties here, nor the court below, questioned whether this summary was an SPD." *Koons,* 367 F.3d at 775.

[5] The actual holding in *Pisciotta* did not entertain whether or not the summary could be considered a "faulty" SPD. The Ninth Circuit held: "Appellants' argument is insignificant, however, because it is undisputed and Appellants concede that neither the 1969 booklet nor the 1972 booklet contained all twelve of the required statutory elements. Accordingly, the district court correctly concluded that there was no triable issue of material fact and that, as a matter of law, the booklets did not constitute SPDs." *Pisciotta,* 91 F.3d at 1330.

F.3d at 1329-30. Also relevant to the analysis in *Palmisano* is that "The Plan Book directed Palmisano to an 'enclosed description,' a document which he never received and which neither party introduced into evidence." *Id.* at 888.

The summary at issue presently, however, does not reference any other document and arguably meets six of the eight requirements listed in the *Palmisano* decision:

> * the name and type of plan –   The Letter states that the Board of Directors adopted a "change of control severance plan.";
>
> * the name and address of the agent for service of process –   The Letter is signed by the Chairman CEO and Vice Chairman COO of Saks Inc. and the address of the Birmingham, Alabama office is provided;
>
> * the name and address of the plan administrator –   The Letter states that the Board adopted the plan and it is implied that the Board is responsible for plan administration;
>
> *  the plan's eligibility requirements –  The Letter states: "For you personally, were there to be a change in control or a sale of a major business unit that caused the elimination of your position, a reduction in your pay, or a change in salary of your location greater than 50 miles, you would be entitled to 26 weeks of salary.";
>
> *  the source of the plan's financing –  The Letter implies that Saks Inc. provides the financing for the formal plan as approved by the Board of Directors; and
>
> *  the plan year –  The Letter states that the plan year is 2000.

Missing from The Letter are:  the circumstances which may result in denial or loss of benefits  and the claims procedures and remedies available for redress of denied claims.  It therefore appears that the summary provided by Saks Inc. in The Letter is not "hopelessly inadequate."  As stated in this Court's previous Order, The Letter contained sufficient information such that "a reasonable person could

ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." Clerks No. 24 at 4. The Change of Control Plan adopted by Saks Inc. is a fairly simple severance package where the administration and funding of the plan is all done within Saks Inc. Accordingly, the accompanying SPD would not need to be complex. The Court recognizes, however, that The Letter is missing relevant information.[6] The summary provided by Saks Inc. closely resembles the SPD at issue in the Eighth Circuit decision in *Anderson v. Alpha Portland Indus., Inc.* 836 F.2d 1512 (8th Cir. 1988).

In *Anderson*, the summary was lacking in certain details such as "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." *Anderson,* 836 F.2d at 1520. The summary, therefore, was deemed a "faulty" SPD, but not "hopelessly inadequate." The plaintiff in that case did not recover under the ERISA plan, however, because he made no showing of reliance on the "faulty" SPD. Again, in *Maxa v. John Alden Life Ins. Co.*, 972 F.2d 980 (8th Cir. 1992), the Eighth Circuit "doubted whether the summary plan description [at issue] met the requirements of ERISA," and therefore, classified the SPD as "faulty." *Id.* at 984. Further, though not specifically discussed in either the *Anderson* or *Palmisano* decisions, it appears, as in cases regarding the establishment of an ERISA plan, that the employer's intent in regards to the document is a relevant consideration. The Fifth Circuit decision in *Hicks,* which was cited by the *Palmisano* court for support of why a "wholly inadequate" SPD should have not legal effect, states: "Quite simply, there should be no accidental or

---

[6] In order for an SPD to be considered "faulty" there must be statutory elements missing – not merely terms between the formal plan and the SPD that conflict. "Simply because terms in the formal plan and the SPD conflict does not render the SPD faulty." *Marolt,* 146 F.3d at 621.

-13-

inadvertent SPDs." *Hicks*, 961 F.2d at 542. Likewise, the booklet summary in *Palmisano* referred the employee to another document, clearly showing that the employer did not intend for the booklet summary to be relied on by the employee. In the present case, however, it is undisputed that the Defendant intended The Letter to be a "Summary Plan Letter." The Letter did not reference any other document, and The Letter was the only information Saks Inc. ever provided to the employees from the time that the Change of Control Plan was adopted to the time of the internal consolidation, two years later. The Court finds this as strong evidence of the Defendant's intent that The Letter serve as the SPD.[7] Even without considering Saks Inc.'s intent, however, the Court concludes that The Letter more closely resembles the SPD deemed "faulty" in *Anderson* than the "wholly inadequate" summary found in *Palmisano*. Accordingly, The Letter is correctly classified as a "faulty" SPD.

"A showing of reliance or prejudice must be shown to entitle a claimant to relief based on a faulty SPD." *Dodson*, 109 F.3d at 439. "'Evidence of detrimental reliance must show that the plaintiff [] took action, resulting in some detriment, that [he] would not have taken had [he] known [that the terms of the plan were otherwise],' *Monson v. Century Mfg. Co.*, 739, F.2d 1293, 1302 (8th Cir. 1984), or that he failed, to his detriment, to take action that he would have taken had [he] known that the terms of the plans were otherwise." *Maxa*, 972 F.2d at 984. Defendant argues that the Plaintiffs

---

[7] This Court also finds persuasive reasoning found in a Second Circuit decision: "The consequences of an inaccurate SPD must be placed on the employer. The individual employee is powerless to affect the drafting and less equipped to absorb the financial hardship of the employer's errors." *Burke v. Kodak Retirement Income Plan*, 336 F.3d 103, 113 (2d. Cir. 2003). It was clearly the intent of the employer that The Letter was the only information that employees were to receive regarding the ERISA plan. The employer should therefore be responsible for the consequences of its poor drafting.

did not rely on The Letter because merely being "put at ease" and "being undistracted" is not reliance. Viewing the facts in the light most favorable to the Plaintiffs, however, does generate a factual question on the issue of reliance. There were rumors circulating among the Plaintiffs regarding job security, which were immediately addressed by Defendant by adopting the Change of Control Plan. It is reasonable to infer that, but for the immediate action of Saks Inc., the Plaintiffs would have taken action either in the form of looking for another job or otherwise planning for their financial security.

The Eighth Circuit also provides for recovery upon a faulty SPD if the plaintiff can make a showing of prejudice, but it is not clear what a showing of prejudice requires. The Second Circuit's standard of what constitutes prejudice is as follows: "[W]e require, for a showing of prejudice, that a plan participant or beneficiary was likely to have been harmed as a result of a deficient SPD. Where a participant makes this initial showing, however, the employer may rebut it through evidence that the deficient SPD was in effect a harmless error." *Burke,* 336 F.3d at 113. Nonpayment of significant severance benefits could certainly be construed as a harm to the Plaintiffs. However, as the issue of reliance or prejudice turns on a variety of facts currently in dispute, summary judgment is not proper for either party.

## V.  RECOVERY UNDER 29 U.S.C. § 1132(a)(3)

Plaintiffs' Second claim for relief is for breach of fiduciary duty authorized under ERISA. "A civil action may be brought by a participant, beneficiary, or fiduciary to obtain other appropriate equitable relief to redress such violations." 29 U.S.C. § 1132(a)(3). Plaintiffs argue for relief under both equitable estoppel and misrepresentation theories and request the same relief as in their claim under § 1132(a)(1)(B). "'[A]n employer can be liable under ERISA in its fiduciary capacity for making

affirmative misrepresentations on breach of fiduciary duty and equitable estoppel theories.'" *Brant v. Principal Life and Disability Ins. Co.*, 195 F. Supp. 2d 1100, 1113 (N.D. Iowa 2002), *aff'd*, 50 Fed. Apx. 330 (8th Cir. 2002) (quoting *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235 (3d. Cir. 1994). To present an equitable estoppel claim, an individual employee must show: 1) a material representation; 2) reasonable and detrimental reliance upon the representation; and 3) extraordinary circumstances. *Curcio,* 33 F.3d at 235. To establish breach of fiduciary duty based on misrepresentation, the following must be shown: "1) defendant's status as an ERISA fiduciary acting as a fiduciary; 2) misrepresentation on the part of the defendant; 3) the materiality of that misrepresentation; and 4) detrimental reliance by the plaintiff on the misrepresentation." *Daniels v. Thomas and Betts Corp.*, 263 F.3d 66 (3d. Cir. 2001). Viewing the facts in the light most favorable to the Plaintiffs, due to the climate at Younkers at the time of the adoption of the Change of Control Plan, it is possible that Saks Inc. purposefully crafted The Letter in a manner such that the Plaintiffs would believe that the Change of Control Plan covered internal consolidations. Equitable theories of relief, however, are not appropriate in this case.

"Where Congress elsewhere provided an adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief would not be appropriate." *Varity Corp. v. Howe,* 516 U.S. 489, 515 (1996). Accordingly, the Eighth Circuit holds "that where a plaintiff is provided adequate relief by the right to bring a claim for benefits under . . . § 1132(a)(1)(B) the plaintiff does not have a cause of action to seek the same remedy under § 1132(a)(3)(B)." *Geissal v. Moore Med. Corp.*, 338 F.3d 926, 933 (8th Cir. 2003) (internal citations omitted). Plaintiffs had every right under Federal Rule of Civil Procedure 8(a) to plead alternative theories for relief, both under

the plan and under equitable principles.  Since, however, Plaintiffs' claim under § 1132(a)(1)(B) survives summary judgment, and since reliance is a common element of both Plaintiffs' legal and equitable claims, further equitable relief is not appropriate.  *See Conley v. Pitney Bowes,* 176 F.3d 1044, 1047 (8th Cir. 1999) ("'[W]here a plaintiff is provided adequate relief by [the] right to bring a claim for benefits under § 1132(a)(1)(B),' the plaintiff does not have a cause of action to seek the same remedy under § 1132(a)(3)(B).") (quoting *Wald v. Southwestern Bell Corp. Customcare Medical Plan,* 83 F.3d 1002, 1006 (8th Cir. 1996))).  If this Court had found, as a matter of law, that The Letter was "wholly inadequate" as an SPD such as to have no force or effect over the terms of the formal plan, continuing with the claims for equitable relief would have been appropriate.

## VI.  CONCLUSION

Genuine issues of material fact remain which preclude summary judgment on Plaintiffs' claim for benefits pursuant to Saks Inc.'s Change of Control Plan.  While the Plaintiffs may not rely upon the October 27, 2000 Letter as a separate ERISA plan, they may rely on The Letter to the extent that it is a "faulty" SPD.  Accordingly, whether or not Plaintiffs relied upon or were prejudiced by the terms of the October 27, 2000 Letter remains to be resolved at trial.  Additionally, since Plaintiffs' claim for benefits survives under § 1132(a)(1)(B), their alternative claim for equitable relief for breach of fiduciary duty is not appropriate, and is therefore, dismissed.  For the aforementioned reasons, Plaintiffs' Motion for Summary Judgment (Clerk's No. 63) is DENIED and Defendant's Motion for Summary Judgment (Clerk's No. 50) is GRANTED in part (in regards to Claim VI) and DENIED in part (in regards to Claim V).

IT IS SO ORDERED.

Dated this ___17th___ day of August, 2005.

_____
ROBERT W. PRATT
U.S. DISTRICT JUDGE